May it please the court. I'm Mike Bragg. I represent Brian Davison, a parent of students in the Loudoun County school system. At the time of the events that brought us before this court, he had children at Seldon's Landing Elementary School. Brian is a professional and had become quite a community activist, raising all sorts of issues regarding the administration of the schools there, and it's particularly with regard to to Seldon's Landing. He raised issues under the various federal statutes over a period of time that culminated in the fall of 2015 with the issuance to him of three letters, starting on September 29th, follow up on October 8th, and then finally on October 14th from the principal of Seldon's Landing, banning him from coming on the Seldon's Landing property under penalty of prosecution for criminal trespass. This suit ensued, and of course where Mr. Davison raises issues related to his constitutional rights. This case is related to various litigation that has happened and is going on regarding the relationship of the public school systems with students as reflected in the United States Supreme Court case of Mahaney that was decided just this year, Mr. Davison's case as a parent. There's litigation that's actually now ongoing with Loudoun County School Board involving teachers since they're applying this no trespass policy. The case has gotten quite a lot of national publicity. The case against Denner Cross, who was a teacher who spoke during a public comment time against a proposed new policy, and because of his opposition to that policy, was suspended from his job and was given a no trespass word, stay off school property. That case is still pending, although at the pedente glade injunction granted against the school system was affirmed by written opinion by the Virginia Supreme Court just last month. That is the Commonwealth records Supreme Court record 210584. Obviously, we've raised a lot of issues in this lengthy brief, a very large appendix, and within a lot of time there'd be no way to argue all of those. What we don't mention today, we are not waiving and we're falling back on that brief. Briefs that have been submitted, there's a few issues that we want to address today. The first I want to address is the question of the district court's granting of racial judicata effect to the order entered by the circuit court allowed in the county. We're in a case by which Mr. Davison, after his banning and with his process with his whole board, he filed a petition to review that under statutory procedure. Within the circuit court, he filed that pro se case, set for a while, and after the federal 1983 case was filed in the eastern district of Virginia, he went to that court asking to non-suit it essentially on two there. The banning of the property had expired by its own terms with the end of the school year, and secondly, he had the case pending in federal court. Mr. Jenkins, let me ask you this question. How can you make an England reservation claim during state court proceedings when you agreed to dismiss the appeal at the state court with prejudice? Isn't a dismissal with prejudice a final order? Your Honor, you're addressing that to me. I think it matters not that the order stayed with prejudice. Under England, giving notice to the court that you are reserving your federal claims for federal court is sufficient, and he did so explicitly, and did so in his lengthy motion to non-suit, and that is found starting in the appendix, page 697, did a probably a much more lengthy motion than pro se that most attorneys would have done. But in that lengthy motion, and at least one, two, three, four places mentioned that he is reserving his federal claims, and that case needed to be dismissed so that he could go forward with his case in the Eastern District of Virginia. But you could have just withdrawn the appeal, and he wouldn't be in this predicament, wouldn't you? Not necessarily, Your Honor. There really is no statutory or rule provision talking about withdrawing an appeal. Now, that is language that we use. I have done the same thing. The effect of withdrawing, if you withdraw that petition, withdraw that appeal, there still has to be an order to remove the case from the docket, which would essentially be a final order, and unless it's stated without prejudice, it would still be a final order with prejudice. So, withdrawing the appeal is not something that would have made the circumstance that they keep different. But ultimately, what we say is that under England and England's progeny, if the person having a federal constitutional claim tells the state court that they are intending to litigate those federal issues in federal court, that ends it. I would say even if the state court said, no, you're not, you're in front of me, and I want to rule on it over your objection, then you still would have reserved it under England. The principle and the... Reserved for both the federal court and the state court, you're saying? I'm sorry, your honor. Your honor, would you repeat your question? I said it's reserved for what court? Reserved for the federal court. You can tell the state court to reserve the federal claim so that you can get the state court to decide what the federal court can do. No, what I'm saying is that if a person has a case pending in state court and whether explicitly the federal issue was raised or it's merely implicit as being part of the related claims so that collateral stuff would apply, and the party told the state court, under England, I am reserving my federal claims for federal court. I am not submitting them to you for decision. And the state court replied, its response was, you're in front of me and I want to rule on it. And I don't care whether you're reserving them or not. Even if the state court did that and entered a final decision, I think that that would not be binding on the plaintiff under England. England would allow him to withdraw that federal claim to the federal court, especially when there was, as here, a case pending in federal court, a case in which the district judge had stayed the proceedings in federal court until the state action was over with. Now, were you representing your client when this happened or he was representing himself? I was representing him in the federal action. We had, was he representing himself in the state court? He was, he was pro se. He was pro se over in the state court, but you were representing him, but you didn't show up in the state court. No, that is correct. I was not representing him on that. But he initially wanted the state court to rule on the constitutional claims. He, on the federal claims, right? He had, he had raised issues as, he had raised issues as, federal claims in the state court, which he's entitled to do, the state court could rule on questions presented to him. Is that right? You get a state court judge to rule on a federal issue? In that case, yes and no. You practiced law around Abington, right? Yes, Your Honor. Do you remember Judge Widener? Your Honor, I certainly remember Judge Widener. I law clerked for him. I would have to say he was my mentor. Judge Widener was on a case with me one time. We had about a dispute over an incident at a school, and they're trying to raise federal questions. And the decision recited, and I'm going to quote it here to you, school officials have the authority to control students and school personnel on school property, and also have the authority and responsibility for assuring that parents and third parties conduct themselves appropriately while on school property, unquote. Now, would you argue that that's bad law? No, I would not. So you agree that that's still good law? Yes, you know, how it is applied, it certainly has. That's part of what they did here. Your client was disturbing the river, right? Yes. And the school officials took action to ensure that parents, it's what he was, conduct themselves appropriately while on school property. That's what they would say. Anyway, I noticed that's true of practicing law, and I thought you'd remember our friend Judge Widener. Oh, yes. He was on that panel, and he was part of it. That was part of his work there, but I was on it with him. And I can see him making that decision. I could also see him saying that the way that they regulate what parents do on the school property is still governed by the Constitution of the United States. And that's part of what we come to, and I'm kind of going to be jumping around on boundary issues. There is an absolute factual controversy as to what Mr. Davidson's behavior was. Judge Trinda actually, we believe, violated the rules on how to go forward with summary judgment by not recognizing that there was an absolute factual dispute as to what happened and what was done. Now, some of the things that were not in dispute. There is no dispute that Mr. Davidson was never alleged to have gone into the school during school hours, acted up, threatened anyone, made noise, and disrupted teaching. They didn't like the way that he raised issues with him. They sometimes didn't like the manner in which he raised issues with him during public meetings. For example, there in September of 2015, as noted in the letter telling him that he is going to be banned, it was because he showed up at a PTA meeting and then a back-to-school meeting, and the principal said she didn't like the way that he handled himself. His testimony was that he was there at one of those and had not participated in the meeting and was leaving because he had a place to go. Actually, a hearing on another case he was involved with with the school board, maybe a FOIA case, and the principal chased him out of the room and followed him down the hallway and accosted him verbally and told them that she was going to have him banned from the school. There was never, and this record doesn't matter how much you look at it, you will find nothing that he was doing that was disruptive to the schools, and that was a factual issue, which the trial court failed to appropriately gauge and weigh. As the court ruled in the retaliation case that the plaintiff did not have proper evidence that would carry his causation burden on the retaliation, look at the three letters they are saying that he is being banned for his expression of his First Amendment speech at the school and to the principal, that he is being banned because his on the public sidewalk in front of the school. Truly, a jury could draw the inference that that was the cause, and there was no evidence at all of any kind of disruption by Mr. Davison. Again, going back to Judge Widener, Judge Widener would look at the school and say, what are you doing, and why are you doing it? He would not have given them any broad claim of right that they could do whatever they want to, however they want to. The second thing, if I may, Mr. Bragg, you're well over your time. Oh, I'm sorry, Your Honor. I've lost my count of the time they're answering the questions. I will reserve the balance of my time. Okay, thank you, Mr. Bragg. Ms. Judkin? Yes, sir. Judge Tranga was correct in finding that the principles of race judicata precluded Mr. Davison from attempting to litigate whether or not the school ban violated the provisions of Section 22.187. As he pleaded it, you have before you in the record his petition for review. He argued it was an arbitrary, capricious, illegal decision by Ms. Stevens and then upheld by the school board, and the grounds, the facts he pleaded in support of that were violation of his constitutional rights. All of the same claims he made to the district court for arguing that the school ban was unconstitutional. This court has in Lovern said that disputes like this should be in state court and should be filed pursuant to that statute because that's the appropriate place for them in terms of recognizing that there's a line of cases that I believe plaintiff's appellant is ignoring exactly what Judge King said. The school system by the Constitution of Virginia has the right to control who's on their property, what's going on, disruptive behavior. It isn't just a security threat that's at issue here. It isn't just has he said he's going to shoot someone, has he said he's going to kill someone, has he come on the school property with a gun. It is disruption to the tranquility of the school environment. All of this was encompassed in his petition and he, Virginia law requires the court speaks through its orders. At the hearing, he made no reservation. At the hearing, he completely relinquished everything related to the school ban and by saying, I don't have any claim anymore. It's gone. They let me back. I don't anticipate this is going to happen again. And then in the order, he signed it, seen and agreed. And it was even his order. He prepared and proffered the order, this agreed dismissal with prejudice. He made no reservation recognized by law. He abandoned it. And really- Did he, did the district court consider the England issue when it was before Judge Tringa? The England issue was not raised before Judge Tringa. Well, has he therefore waived that? Yes. It's not in, you read the transcript from the argument and his briefs. It was raised for the first time here on appeal. Never gave the district court any chance to review it or look at it. Yes. I argue he's waived it. And this- But we give a lot of leeway to pro se litigants. You know that, don't you, Ms. Judge? Yes, but the state- Yes, but the- I'm sorry. We're not, we can't take advantage of, we can't allow the lawyers, skilled lawyers on the other side to take advantage of it too. Well, the state- You've got to overcome that burden here too with this point. You understand that, don't you? I understand, but in arguing to Judge Tringa, he had a lawyer. He was represented when he made the arguments in the district court. He was represented by counsel in the state court. Now, Virginia state court does not give any leeway to pro se litigants. They're expected- We're not in the state court. We're here. Right. But I'm arguing that what happened in the state court is a matter of record, and he voluntarily relinquished any claim. Okay. In the district court, he did not raise the England argument, and he was represented by counsel. He had two attorneys actually. So, I argue that he isn't entitled to any inference given pro se's because in this proceeding, he was always represented by counsel. As Mr. Bragg has admitted, he was represented by him, but he just didn't have him, chose not to have a matter in appearance in the state court proceeding. The race judicata ruling goes to the official capacity claims. There were still individual capacity claims that went forward with evidence developed. The record, I argue to you, is clear that there was no claim for unconstitutional actions by the school system for the school ban, regardless of whether it was official capacity or not. The record shows Mr. Davidson created significant disruption at this school. It's an elementary school. These teachers are not like police officers in Fourth Amendment cases who are expected to have riled by people carrying on and acting crazy and doing things that don't happen. This is a school, an elementary school. These people like children. They have kindergarten through fifth grade. Mr. Davidson was making threats to teachers, such as, you better not be doing what Principal Stevens is doing, or I'm going to sue you. You're going to find yourself in federal court. Not just that. You're going to find yourself on some crazy website by some woman named Diane Ramovich. I'm going to get you on that website, and they're going to try to interview you. These people who go to college to teach elementary school, they don't buy into crazy parents who are trying to harass them. That definitely upsets the tranquility of the school, such that two administrative meetings took place at the school. They had people come down, administrators and the security director, to calm these teachers down and tell them, this is what we're doing to protect you. They still had teachers complaining, I am being harassed and you're not doing anything, to the administrators. You had a principal who didn't decide on her own, and this dovetails into the qualified immunity argument. She didn't decide on her own to ban him. She didn't know how to ban anybody. That's the record. She had to speak to Virginia Patterson. She had to speak to reviewed. He wrote the letter. He just told Stephen she had to sign it. She didn't even want to sign it, but she was told she had to. Well, now you know from the record there's a more formalized system, but it had started then. Before those letters went to Mr. Davidson, they were reviewed by administrators, and there were meetings with staff to try to calm them down. It didn't work, because Mr. Davidson just wrote more horrific emails to these teachers. I want you to meet me off campus so I can talk to you. They're not going to meet him off campus. I want you to do this. I want you to do that. He was making social media postings, derogatory postings about the teachers and the principal. That was disruptive to the school. But would you want us to decide this case on the basis of qualified immunity or on the basis of whether it's a constitutional violation? Well, I think you can decide it on qualified immunity under Pearson, and the judge decided. We can take either prong in whichever order we want to. I'm just asking you as counsel for the asserting qualified immunity. Do you want to resolve on qualified immunity, or do you want to put that aside and have it resolved on whether or not there's a constitutional violation that's shown? I want it resolved on both. There's no constitutional violation. We don't have to resolve it on both. If we resolve it in your favor on the lack of merit to the claim, then there's no issue with qualified immunity. You never reach qualified immunity. If there's no constitutional violation shown, you never get to qualified immunity. If there's a constitutional violation shown, or you assume one, then we have to decide whether the law is clearly established and whether there's a qualified immunity anyway, even if there's a constitutional violation. Yes, sir. But we can do either one. There's a case called Sauvier, and I may be pronouncing it wrong. That's a French word. I'm not very good at that, but that tells us, that's in the spring going out of state, that tells us we can take either prong for that thing and decide it, or take either one first and deal with it that way. I'm just asking you because you're here the one that's asserting the qualified immunity issue. Yes, but I do not want to concede there was a constitutional violation or that that issue- You would, and you probably wouldn't want us even to assume there's a constitutional violation. You'd rather have us decide, I suspect, that they've taken the best look we can at this thing, looking at it in Davidson's favor, there's no constitutional violation shown. But I was just trying to ask, give you an opportunity to say something like that, because you brought up qualified immunity. Oh, I see what you're saying. I'm sorry. Yes. I am relying, I want the court to find there's no constitutional violation based on the record, based on the case law, that was in effect and still in effect at the time, as you pointed out. And even if there were to any constitutional violation, the individuals that he sued for this, individual capacity claims entitled to qualified immunity. The case law, honestly, I think the case law went in favor of my clients based on Loverne and the other, and the Edwards, Prince William County case, the cases that talk about how the school system really can control who is on their property. These are not, they, this is not an unusual circumstance where a, or isolated circumstance, where a school system has banned someone for causing disruption. And the disruption is evident. The disruption is evident. Even Mr. Davidson admitted in his deposition that he liked to get people's attentions, although this was about the school board meetings. He likes to get people's attention by talking really loud, getting confrontational, acting in the behavior. He cited the example of the late Elijah Cummings as his example of how he wanted to get people's attention at the, in the school system. So yes, I am stating- And you took that to represent that that means he was what? Well, no, I- No, excuse me. You said that he represented himself as, as Elijah Cummings being, I guess, a prototype or model of, and you said, what does that, what does that mean? You said, therefore- Well, I wasn't, that meant nothing to me. It was his- No, you brought it up. Right, right. That would be an example of what kind of, of the level of disturbance he was interested in, or his motive, or the way he made himself heard. You brought that up. I'm asking you, what do you mean by that, by saying that? He went beyond that. It was beyond Elijah Cummings. Oh, beyond, okay. Right, right. What is referencing Elijah- He said it, Mr.- I know he said that, but you, your counsel and you here, you wanted to convey to us that that must be some example of the level that he sought, or modeled to. And I'm asking you how- Well, he didn't. Well, I brought that up because he didn't act like Elijah Cummings. You didn't say that. You didn't say that. Well, he went beyond it, though. The words he went beyond and said, he wanted to be- I was wondering what you did about that. You know- He thought he was being, he thought he was being an advocate. He thought he was being an articulate advocate. He thought he was doing things like- His children go to that school, right? Yes, they do. Well, they did. And you contrast that this is not a high school. This is elementary from the teacher's perspective. But I would submit that as elementary school, where you get the most parental involvement sometimes, and sometimes exercise. And if there's any indication of what that might look like, what's going on in our country now, you see a lot of people are very interested in what's going on in schools with their children and have something to say. And they're objecting to a lot of things in terms of restrictions and all those things. So, you use the term, these are your words, you say crazy. I'm quoting you this morning. You use a lot of terms in terms of negative adjectives toward him. But he's a parent, and he had some concerns. And sometimes people who need to be heard, society passed them by. They're voiceless people. And until that they raise it up a notch, I'm not talking about violence, but I'm talking about because they sometimes become people who some people call irritants. They're told once, no. And then some people said, no, I'm going to come back again until I get a more reasoned response. So, he's not a trespasser in the sense that some interloper, but you're right, there's a balance. School has to be that. But just interesting, you kept going on and on and on. And then you brought the late representative of Congressman Cummings. And I'm saying, where are you going with this in terms of that? He wasn't acting like- But you didn't say that. You didn't say that at all. You said that that was- But anyway, let's get to this. Let's get this. What about retaliation? We're on summary judgment and all reasonable inferences would be drawn in favor of the non-moving party, correct? That's true as a standard of review. All right. Yeah. Obviously, that's what I was giving to you for a standard review. Right. Okay. All right. Now, there's this claim against Stevens that in retaliation, he made a report, CPS. Is that right? Yes, he makes that claim. And that's because they saw his children passing out flyers. He made a complaint with Child Protective Service? No. Or a report or something like that? No. The record shows that two teachers came to her with concerns about their being neglected. Hygiene, not having coats when it was cold, not having proper footwear. Yes. And embroiling them in handing out these flyers about the principal. She's a mandatory reporter. She sought legal advice before she contacted CPS, division counsel. I argue that she, there's no- Those are facts. Those are facts. But we're talking about all inferences drawn. There's certainly a temporal connection with his complaints and that report. And also, that the flyers were negative to whom? The principal. Right. They weren't just negative. Well, the point is that the, I'm just saying negative. I don't want to use all these addictive things that you're using in terms of, they were negative. And you can, it's a record how negative they were. But how do we say as a matter of law that that wasn't connected in terms of retaliation? Judge Tringa found on the record and stated that the reason he was banned from the school was not because of what he was saying. It was because of his conduct. I'm talking about retaliation based on making the report to CPS now. How do we know as a matter of law that there was no connection with retaliation in that? That's what I'm saying. Because the facts that were uncontested as to why the report was made to CPS were not forward with anything to dispute that the children's teachers raised concerns that they did not come to school with the correct clothing at times. Their hygiene was at issue and that they were concerned about the flyers. Even the mother, the mother told him to stop having the children stand around handing out these flyers. The mother told him to stop doing that. I'm saying that, but what, but, but as a question of fact, isn't it as to which was the driving motive? Well, my point is this. Yes, it could be true that the coats weren't worn in their view, consistent with the temperature. Or you can say hygiene. You said generally, so I'll leave it at that. But the point is, the question is, it also could be a trial fact could find that no, the principle reason was the principle, not principle. But the main reason was that they were retaliated because he had negative things to say. And you said it was more than negative. So these things, and then that was the driving reason. How do we go as a matter of law? That's not the case. That's an inference drawn on behalf of the moving party there. No, all he has said is I was retaliated against. He has not produced affirmative evidence to dispute what our record shows. If this case were to go back and be tried, this is 2015 when this was happening. And this principle and then a jury is going to decide whether the school system properly banned Mr. Davis. I'm talking about the retaliation claim. Retaliation. Yes, I argue that the record doesn't support even an inference. Just him saying he was retaliated is insufficient given the entire record of what you see. And I don't want to waive anything in my brief about the school board meetings, Facebook, defamation, and I'm out of time. You're the boss. I'm not the boss. I'm the chief of this panel. What did you say, counsel? I said you're the boss of me. Don't use terms like that. I'm not the boss of anybody. I'm the chief of the United States Court of Appeals for the Fourth Circuit. I'm asking you questions. Yes, and I appreciate that. I appreciate that. What I'm asking, what I'm saying is that in terms of retaliation, retaliation, you said we do that. We do it in Title VII many times. And that is we can't get into someone's head. But the question is in terms of the fact question of retaliation, when you're making these statements, negative statements about someone and then in a matter of how many days passed between the flyers and the reports of CPS? I don't recall off the top of my head. I'll be honest. The record is... But you would suggest that you might say they're almost, they're very close in time. Your recollection? No, actually, I don't think they were necessarily very close in time. I really don't remember. But no, I don't think there were necessarily... More than a month, more than a month. I'm not really sure how close in time. But retaliation, it has to be the but for. But for him saying negative things about her, she wouldn't have made the CPS complaint. The CPS complaint didn't just come from her. It came from two other teachers as well. The process is under Virginia law, the principal puts it in to Child Protective Services and they decide whether to the complaints about him and how the children were being either neglected or... There's other things in the record about things that he wrote on notes to them. All of that went to CPS. And the record that went to CPS is in the joint appendix, what was actually sent to them. And what was actually sent to them was multiple things. So, but for causation, Judge Trenga found also there's no but for. But for him handing out those flyers, she wouldn't have made the CPS. No, that was not the main focus of the CPS complaint. They thought the children were being neglected by him on a personal level. And that's when CPS complaints are made. They're mandatory reporters. So, they have to err on the side of protecting the children. So, I mean, I think there is evidence they were being neglected, these children. So, maybe not to the level that CPS is going to take any action, but that's up to CPS. If my principal and the others at the schools didn't... She did that based on advice of the division council. So, there's no but for causation. And regardless, there's no evidence she did it because of any malice or anything. And I think she should be entitled to qualified immunity as well because of the unique circumstances here. All right. All right. Thank you, counsel. Mr. Bragg. Thank you, Your Honor. And just very quickly, just a few things. One, we did litigate and raise the Judge Trina specifically ruled on the England reservation. So, to suggest today that it was not raised by Mr. Davidson in the district court is... I don't know where that comes from. Secondly, I would also bring to the court's attention that with regard to Principal Stevens, that during the pendency of the ban from the school, which of course included anything that happened at the school, Mr. Davidson wanted to go to his daughter's musical recital at the school after hours, ask for permission, there was a meeting. And I believe Dr. Patterson was involved as well as Principal Stevens. And according to Mr. Davidson's testimony, it was acknowledged that he had not been a danger to anybody at school. It was recommended that he allowed to come back to the school. But Principal Stevens said, as long as you keep your mouth shut and don't raise these issues with the teachers and with the other parents, because that's trouble, all these things that you are raising and saying, including things about her. And then finally, as the court has observed, when you're looking at retaliation, you're looking at the full context and all the inferences that can be drawn. Yes, how the school system responded to Mr. Davidson, seeing him as disruptive, was displayed today. Elijah Cunnings, anyone who would speak with passion and with sincerity to a system that would not listen, anyone who would advocate for those who needed help, who couldn't speak for themselves, would be considered a disruptor that needed to be quiet. And that is the reason that Brian Davidson was quiet, because he was effective, because he was passionate, and because he was strong in his principles, brave in his heart, and was willing, like someone similar to Elijah Cummings, to stand up and say, stop, change your ways. They did not want to hear that, so they shut him up. If the court has any other questions, I would submit the case from there. No, I just want to respond. The question you brought to a claim of retaliation as to the CPS, are you saying there was no facts there? Oh, no. I'm saying that that's part of the overall... No, but I'm asking you about that particular claim, CPS. It's my memory of the record, Your Honor. There was some lapse of time, if you're asking, was it immediately after the report to CPS that the ban occurred. It was, I think, during the previous year's school year. Okay. It was not within... So, within what? It was not within a week or two or a month. Okay, all right. That's my understanding. Essentially, the ban occurred. So, if it's not then, I thought my understanding was that there was some temporal connection, whatever that... But then, why is that still a claim? I mean, if you don't have the temporal aspect, counsel, your colleague on the other side, Ms. Jetskin, says that there were other reasons. There was hygiene. There was a disconnect with the clothing and the apparel wasn't fitting with the season. Why isn't she correct on that, that she put it in the but-for? I'm not sure that's quite the standard, but I think it can be a substantial reason without a race but, you know, but, you know, so... Eric, go ahead. Mr. Davidson's evidence would be that the complaints that were made to CPS was done merely to punish him and harass him and that there was no factual basis for it that when CPS looked at it, that's what they told him. We find nothing. There is nothing here. I think part of the claim was that at least the way it was reported to him was not there was a problem with hygiene. It was that they wore rain boots to school on a day it wasn't raining. Not that they didn't wear rain boots on and in the context of everything else that was happening, that shows the animus that had developed toward him. In the spring of 2015, during the previous school year that before he was banned, there was discussions of banning him. That is the evidence. There were threats to ban him. There were some of the school board members saying we don't think we could do that. That's punishing him for what he's saying. That'd be unconstitutional. There's evidence of that and then it walks through the summer after the school year, nothing happens. You're starting the new school year and then he's banned. In all of the context of everything else that happened, including the report to CPS, shows the animus and what they were doing and why they did what they did. And for a parent, that's a pretty serious report. Oh, it's a terrible report. He is a former naval officer. He has a master's degree from MIT. He works in computer information for a defense contractor with a high security clearance. He goes to work on computer systems, as I understand it, at the Pentagon and having allegations like that made against him affects his life. Absolutely. And very serious. It's very serious to tell a man that he can't go to his daughter's or orchestra recital. He can't go talk to the teachers for parent-teachers conferences. Why? Because of what he is saying at a PTA meeting, supposedly. Speaking out, bringing questions to light that he was usually substantiated in by other public officials, including winning FOIA lawsuits against the county. Investigations done by other agencies because of his complaints. He was more than just a gadfly. He was a gadfly who was causing there to be serious progress toward making the system better and allowing them to end the schools. All right. Thank you, Mr. Bragg. Thank you, Your Honor. Thank you, Mr. Jenkins. I appreciate your arguments. I wish we could come down and greet both of you. You acquitted yourselves very well, both counsels. Great job. And thank you so much for helping us on these very difficult cases. And I wish you well and be safe. Thank you.
judges: Roger L. Gregory, Robert B. King, Henry F. Floyd